IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. 205-03 & 206-03






ARNULFO MOLINA, Appellant



v.
 


THE STATE OF TEXAS





ON DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY






 Womack, J., delivered the opinion for a unanimous Court.


 These cases present issues about the sufficiency of evidence to convict a person of
possessing controlled substances.

 The appellant was indicted for possession of more than five, but not more than fifty,
pounds of marihuana, and for possession of at least four hundred grams of cocaine. The
indictments were consolidated for trial. The appellant waived trial by jury. The district court
found him guilty of both offenses, and sentenced him to imprisonment for five years in the
marihuana case, and to imprisonment for ten years and a fine of $100 in the cocaine case.

 On appeal the appellant complained that the evidence was insufficient as a matter of
law and as a matter of fact. The court of appeals affirmed the judgments. (1) We granted
review to decide whether the court of appeals correctly applied the test for legal
sufficiency of the evidence, and whether the court of appeals confused the culpable mental
state (knowledge) with the prohibited conduct (actual care, custody, or control). (2) Because
the court incorrectly applied the legal sufficiency test, we need not address the second
ground for review.

 It is well to begin with the law's requirements to convict a person of an offense of
possession. Chapter Six of the Texas Penal Code sets forth the general requirements for
criminal culpability. (3) A person commits an offense only if he voluntarily engages in
conduct, including an act, an omission, or possession. (4) Possession is a voluntary act if the
possessor obtains or receives the thing possessed or is aware of his control of the thing for
a sufficient time to permit him to terminate his control. (5)

 Not only must a person voluntarily engage in conduct; a person does not commit an
offense (except for certain "strict-liability" offenses that dispense with any mental
element) (6) unless he engages in the proscribed conduct with the culpable mental state that
the definition of the offense requires. (7)

 Where the offense is the possession of illegal drugs, the proscribed conduct is
possession (8) -- which is defined as actual care, custody, control, or management (9) -- of the
drugs. The culpable mental state is intent or knowledge. (10)

 "A person acts intentionally, or with intent, with respect to the nature of his conduct
or to a result of his conduct when it is his conscious objective or desire to engage in the
conduct or cause the result." (11) "A person acts knowingly, or with knowledge, with respect to
the nature of his conduct or to circumstances surrounding his conduct when he is aware of
the nature of his conduct or that the circumstances exist. A person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result." (12) Knowledge is a lower degree of culpable mental
state than intent. (13) 

 Therefore the minimum requirement for conviction of possessing an illegal drug
would be proof that the person voluntarily and knowingly engaged in the conduct of
possessing the drug; that is, that the person voluntarily exercised actual care, custody or
control of the drug when he was aware of the nature of his conduct or that those
circumstances that surrounded his conduct existed. (14)

 No person may be convicted of an offense unless each element of the offense is
proved beyond a reasonable doubt. (15) This is an essential of Fourteenth Amendment due
process. (16) It follows that when a conviction was obtained in a state trial, even when no
rational trier of fact could have found guilt beyond a reasonable doubt, it cannot
constitutionally stand. (17) In applying the "no-rational-trier-of-fact" test on appeal, we view
the evidence in the light most favorable to the State. (18)

 The evidence in this case came from the arresting officer, from a stipulation, and
from a co-defendant. In Austin, Highway Patrol Sergeant Vincent Luciano pulled over a
vehicle that was driven by Oscar Vela and in which the appellant was a passenger. The
parties stipulated that the appellant was in the right, front passenger seat and that only Vela
and the appellant were in the automobile.

 Vela had no identification; Luciano's testimony, that later at the police station, "Vela
admitted what his real name was,"can be read to imply that he gave a false name. The
appellant was identified as Arnulfo Molina. Luciano spoke with the men for about five
minutes, "conduct[ing] a routine traffic stop." He observed that both men were nervous;
"Molina was unable to make eye contact with me, and I noticed that Vela's hands were
shaking during the interview."

 Luciano could smell the odor of gasoline in the passenger compartment of the
vehicle. According to the experience of Luciano, who was one of 16 "troopers" who were
assigned to a narcotics section of the Department of Public Safety, gasoline odor in a
passenger compartment often indicates that "the gas tank has been tampered with or it has a
hole in it." In his opinion, this "[u]sually indicates there is some type of contraband or the
gasoline tank has been modified to hold contraband." But he testified that it "is a definite
possibility somebody spilled gasoline in the car. It would smell like gasoline." He saw no
gas can or sign that gasoline had been spilled, though.

 The sergeant saw that the gas gauge read "full," so he asked Vela when he had last put
gas in the vehicle. Vela said it was in San Antonio. Luciano thought, "Driving from San
Antonio to Austin, some gas should have been used." Vela gave consent to search the
vehicle, and Luciano discovered that the gas tank had been tampered with. One could not
tell this unless one looked under the vehicle, as Luciano did.

 Vela and Molina complied with Luciano's request to follow him to the Austin Police
Department garage, where the gas tank was removed and marijuana and cocaine were found
in the gas tank. The parties stipulated that there were 10.44 usable pounds of marihuana and
428.2 grams of cocaine by aggregate weight.

 Vela told the sergeant that it was "only a half," which the sergeant understood to
mean "half a kilo" of cocaine. Luciano testified that during the stop, he had smelled
marijuana on Vela's clothing, and that Vela had admitted to having smoked marijuana earlier
that day. At the police station, he could smell it on the appellant too.

 At the time of the stop, both Vela and the appellant lived in Rio Grande City. Vela
testified that he had told the appellant that he planned to purchase a new car in Austin, and
had asked the appellant to ride with him because he needed someone to drive the first car
back home. According to Vela, he and "some friends" had purchased the contraband in "the
valley" and had hidden it in the gas tank. Vela claimed that he had not told the appellant
about the drugs because he did not want to give the appellant a share of the profits from a
subsequent sale that he was planning to complete in Austin.

 The trial court found the appellant guilty of both offenses.

 The court of appeals, in its legal sufficiency review, focused its analysis on the
"affirmative links" requirement: that where "the defendant is not in exclusive possession or
control of the place where the drugs are found, the State must show an affirmative link
between the defendant and the drugs." (19) Citing Luciano's testimony regarding the odor of
gasoline, the court concluded:

 It was reasonable for the trial court to infer that appellant would not have ridden in
the vehicle with the odor of gasoline in the passenger compartment for fear of a
leak, and that he knew the odor was a result of the alteration of the gas tank to
hold and transport contraband. In light of the standards set out above, we cannot
say that a rational trier of fact could not have found an affirmative link between
appellant and the drugs beyond a reasonable doubt. (20)


 We have some reservation about attributing such an inference to the distinguished
trial judge, and characterizing it as reasonable. The court of appeals' reasoning necessarily
implies that the appellant knew:

 1. The odor of gasoline inside the vehicle necessarily meant there was a leak in the
gas tank and was not the result of a spill in the car or residue on one's hands or
clothing.

 2. A leak in the gas tank necessarily meant that someone had tampered with or
altered it in some way.

 3. This tampering or alteration was done to allow for the storage of contraband in the
tank.

 4. Therefore, a vehicle that smells of gasoline in the passenger compartment must
contain contraband.

Although those with experience like that of Sergeant Luciano's may know some of these
premises, there was no evidence that the appellant did. It might be questioned whether
anyone would hold to all of the premises; Luciano certainly did not.

 It is more important that the inferential knowledge on which the court of appeals
relied does not support the conclusion that the evidence was legally sufficient. This is
because the knowledge that is inferred does not satisfy the requisite culpable mental state
for the offenses of which the appellant was convicted.

 At most, the evidence cited by the court of appeals proves that the appellant knew
that the drugs were present in the vehicle, not that he was aware that he exercised care,
custody, control, or management of them. The appellant's knowledge of the mere presence
of the drugs is insufficient to establish the requisite mental state -- knowledge of his
possession of those drugs. The court of appeals erred in its holding on this issue.

 Furthermore, we believe the evidence is also insufficient to prove that the appellant
possessed the illegal drugs. We disagree with the court of appeals' conclusion that there
were sufficient affirmative links between the appellant and the contraband. The court said:

 Affirmative links between a defendant and the contraband may include: the
defendant's presence when the drugs are found; whether the drugs or other
contraband were in plain view; the defendant's proximity to and the accessibility of
the drugs; whether the defendant was under the influence of drugs when the drugs
were found; whether the defendant possessed other contraband or drugs
paraphernalia; whether the defendant made incriminating statements or furtive
gestures or tried to flee; whether there was any noticeable drug odor; whether the
defendant had the right to possess the place where the drugs were found; and whether
that place was enclosed. (21)


In this case, the contraband was not found in plain view and the appellant, as a passenger in
the car, did not have easy access to the drugs in the gas tank. There is no evidence that the
appellant possessed other drugs or drug paraphernalia, that he had a right to possess the
vehicle, or that he made any incriminating statements. The record shows the appellant's
presence in the car where the drugs were found and his nervousness during the traffic stop.
These facts alone do not affirmatively link the appellant to the drugs, and they are
insufficient to prove his actual care, custody, control, or management of the drugs beyond a
reasonable doubt.

 Because the evidence was insufficient to prove the required knowledge and conduct,
the judgments of the court of appeals are reversed, and the cases are remanded to the
district court with instructions to enter judgments of acquittal.


En Banc.

Delivered October 1, 2003.

Do Not Publish.
1. Molina v. State, 2002 Tex. App. LEXIS 6320 (Tex. App. -- Austin, Nos. 03-02-00122-CR & 03-02-00123-CR, August 30, 2002) (not designated for publication).
2. See "Questions for Review," Petition, at 3.
3. Although the offenses of possessing illegal drugs are defined in the Health and Safety Code,
not the Penal Code, the general principles of criminal responsibility in Chapter 6 of the Penal Code
apply because of Section 1.03(b) of the Penal Code: "The Provisions of Titles 1, 2, and 3 apply to
offenses defined by other laws, unless the statute defining the offense provides otherwise; ." Chapter
6 is in Title 2 of the Penal Code.
4. Tex. Penal Code § 6.01(a).
5. Id., § 6.01(b).
6. See id., § 6.02(b).
7. "Except as provided in Subsection (b), a person does not commit an offense unless he
intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of
the offense requires." Id., § 6.02(a).
8. "[A] person commits an offense if the person knowingly or intentionally possesses a controlled
substance ." Tex. Health & Safety Code § 481.115(a). "[A] person commits an offense if the
person knowingly or intentionally possesses a usable quantity of marihuana." Tex. Health & Safety
Code § 481.121(a). 
9. Id., §481.002(38).
10. See note 8, supra.
11. Tex. Penal Code § 6.03(a).
12. Id., § 6.03(b).
13. "Culpable mental states are classified according to relative degrees, from highest to lowest,
as follows:

 "(1) intentional;

 "(2) knowing;

 "(3) reckless;

 "(4) criminal negligence." Id., § 6.02(d).
14. "[U]nder our law, an accused must not only have exercised actual care, control, or custody
of the substance, but must also have been conscious of his connection with it and have known what it
was." Brown v. State, 911 S.W.2d 744, 747 (Tex. Cr. App. 1995).
15. Tex. Code Crim. Proc. art. 38.03.
16. Jackson v. Virginia, 443 U.S. 307, 317-18 (1979) (citing In re Winship, 397 U.S. 358
(1970)).
17. Ibid.; Griffin v. State, 614 S.W.2d 155, 159 (Tex. Cr. App. 1981).
18. E.g., Dunn v. State, 819 S.W.2d 510, 513 (Tex. Cr. App. 1991).
19. Molina, 2002 Tex. App. LEXIS 6320 at *4-5 (citations omitted).
20. Id. at *6 (emphasis added).
21. Molina, 2002 Tex. App. LEXIS 6320 at *5 (citing Hyett v. State, 58 S.W.2d 826, 830
(Tex. App. - Houston [14th Dist.] 2001, no pet.); Martinets v. State, 884 S.W.2d 185, 188 (Tex.
App. - Austin 1994, no pet.); Villarreal v. State, 865 S.W2d 501, 503-04 (Tex. App. - Corpus
Christi 1993)).